UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LARRY WINFREY,

          Plaintiff,

v.                              Case No. 14-1034-EFM

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, et al.,

          Defendants.


**<u>ORDER</u>**

      Defendant Hartford Life and Accident Insurance Company ("Hartford") denied a claim for long-term disability benefits ("LTD") made by the plaintiff, Larry Winfrey. The benefits were claimed by plaintiff under an Employment Retirement Income Security Act ("ERISA") plan provided by defendant Group Long Term Disability Plan for Employees of Spirit Aerosystems, Inc. (the "Plan"). Plaintiff alleges that Hartford had a dual-role conflict of interest as both the insurer and administrator of the Plan, "tainting" its denial of benefits. Accordingly, plaintiff seeks discovery targeted at Hartford's conflict of interest and how it may have impaired his claim denial. This case is before the undersigned U.S. Magistrate Judge, James P. O'Hara, on plaintiff's motion to compel **(ECF doc. 31)**. Specifically, plaintiff moves to compel defendants to produce responsive documents to plaintiff's Request for Production No. 9. For the reasons discussed below, plaintiff's motion is granted.

## I.      Background

As an employee of Spirit Aerosystems, Inc., plaintiff participated in a LTD plan which was insured and administered by Hartford.  The Plan provides short-term and long-term benefits in compliance with ERISA.  Plaintiff became physically disabled from back pain and neuropathy and went on short-term disability in September 2012.  After an unsuccessful attempt to return to work, plaintiff went on medical leave, which resulted in his separation from employment in 2013.  Plaintiff submitted a claim for LTD in early 2013.  Subsequently, Hartford instructed plaintiff to apply for Social Security disability.  The Social Security Administration determined that plaintiff was totally and permanently disabled, and that his disability had commenced in the fall of 2012.  However, Hartford denied plaintiff's claim for "own occupation" LTD benefits under the Plan.  Plaintiff contends he qualifies for LTD benefits under the Plan.

On April 24, 2014, plaintiff served his first request for production of documents.[1]  Defendants served their objections to plaintiff's requests on May 9, 2014.[2]  In Request for Production No. 9, plaintiff asked for "Claim manuals, internal guidelines, rules and policies for the processing, investigation and determination of LTD claims."  Defendants responded with several objections, but agreed to produce the table of contents and certain relevant portions of a "comprehensive manual providing technical reference tools and

---

[1] ECF doc. 18.

[2] ECF doc. 23.

best practices for the administration of LTD claims ('the BMS Reference Manual')"[3] *subject to* their objections and subject to the entry of a protective order and confidentiality agreement.

Subsequently, plaintiff sought two extensions of time to file a motion to compel with respect to defendants' responses to his first set of written discovery.  The court granted plaintiff an extension until June 11, 2014, to file discovery-related motions.[4]  The parties reached a discovery "compromise" on June 9, 2014.[5]  With respect to Interrogatory No. 9, defendants agreed to produce the "Disability Best Practices Memos; Disability Updates; Claim Submission & Investigation; Definition of Disability; Denials and Terminations; Legal."[6]  Defendants provided these responsive documents on June 13, 2014.

Plaintiff disputes the sufficiency of defendants' response because unbeknownst to him, the claim manual is an electronic reference and many sections of it offer little to no discussion.  The scanned printouts of the claim manual direct the reader to a hyperlinked item called "Claims Excellence."[7]  Plaintiff asserts that his counsel thoroughly conferred

---

[3] ECF doc. 32-1 at 2.

[4] ECF doc. 28.

[5] ECF doc. 32-3.

[6] *Id.*

[7] Plaintiff provided the following examples of topics addressed in the claim manual but discussed on the Claims Excellence website: "Management oversight; Interpreting the Own Occupation Definition of Disability; Which Occupation is it Anyway?; Claim file

with defendants' counsel to settle the issue because the deadline to file motions to compel had already run when he discovered the "deficient response."[8]  But, the parties could not come to a resolution on this issue.

**II.     Analysis**

On August 25, 2014, plaintiff filed his motion to compel defendants to "provide certain 'Claims Excellence' materials referenced in Hartford's claim manual."[9]  Plaintiff asserts that he seeks these materials because they are relevant and material to the case. And because it will "shed light on [Hartford's] reasonable policies and procedures for making benefit determinations."[10]  Plaintiff admits that it would not be proper to allow him to conduct discovery directed to the factual merits of his claim; however, he insists that the court should permit limited discovery related to the alleged conflict of interest and to the policies and procedures used by Hartford to make its decision.[11]

---

documentation; Independent Medical Examinations; Functional Capacity Evaluations; Resolving the Medical Documentation—Assessing a Claimant's Medical Condition— Definition of Disability; Our Understanding of the Claimant's Limitations Differs from the AP [attending physician]—Resolving the Medical Documentation; Denial termination letter procedures; Denial/termination checklist; and Denial and appeal correspondence." ECF doc. 32 at 3-4.

[8] ECF doc. 32 at 4.

[9] *Id.* at 1.

[10] *Id.* at 6.

[11] *Id.* at 8.

Initially, defendants made three primary objections to the disputed discovery requests. First, defendants objected that Request for Production No. 9 seeks discovery beyond the administrative record, which is inappropriate in ERISA matters when the evaluation was limited to whether the claims administrator abused its discretion in making a factual determination related to the merits of the claim.  Second, and more specifically, defendants objected that although some discovery pertaining to the alleged conflict of interest might be permissible, because of Hartford's dual role, the disputed request was not directed to that limited topic.  Finally, defendants objected to producing the contents of the claims manual because it contains confidential, proprietary material. Although defendants eventually agreed to produce each of the various sections of the claims manual that plaintiff had requested, defendants assert their compliance was contingent upon it resolving all of plaintiff's issues with Request for Production No. 9.[12]

On June 22, 2014, plaintiff contacted defendants, seeking additional production. Specifically, plaintiff asked for a complete copy of "an entire confidential, internal database."[13]  Defendants assert that plaintiff's basis for his additional request was that the produced materials contained cross-references to another database.   According to defendants, this is true of the majority of their internal operating documents.  Defendants argue that plaintiff's request for these materials is a "direct violation of Plaintiff's explicit

---

[12] *See* ECF doc. 34-1.

[13] ECF doc. 34 at 3; ECF doc. 34-1.

discovery agreement, undermining the rationale of encouraging parties … to resolve discovery disputes …"[14]   Nonetheless, defendants offered to produce the items if their compliance would end plaintiff's discovery requests.[15]  Plaintiff responded with requests for *additional* materials and requirements to which defendants could not agree. Therefore, plaintiff filed the instant motion.

Defendants assert that plaintiff's motion should be denied for two reasons: (1) on the grounds of fundamental fairness per the discovery agreement; and (2) on the merits because the discovery sought is outside the administrative record and is not probative of defendants' alleged conflict of interest.

Fed. R. Civ. P. 26(b)(1) currently provides that generally the scope of discovery is limited to the parties' pleaded claims and defenses, but that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action"; on December 1, 2015, if recently proposed rules amendments go into effect, the latter sort of discovery no longer will be available.  In any event, when a party files a motion to compel and asks the court to overrule objections, the objecting party must specifically show in its response to the motion how each discovery request is objectionable.[16] Objections initially raised but not supported in response to the motion to compel are

---

[14] ECF doc. 34 at 3.

[15] *See* ECF doc. 32-6 at 2.

[16] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004).

deemed abandoned.[17]   However, if the discovery request appears facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable.[18]   With these standards in mind, the court addresses defendants' objections and responses to the disputed request.

### A.   Timeliness

Before addressing the substance of plaintiff's motion, the court will briefly address the timing of plaintiff's motion.  Under D. Kan. Rule 37.1, a motion to compel discovery must be filed within thirty days of the default or service of the response.  Here, plaintiff's deadline to file a motion to compel ran on June 11, 2014 and plaintiff didn't file his motion until August 25, 2014.

Plaintiff asserts that good cause exists to allow him to file his motion out of time because he was not aware of the "discovery deficiency" until after the time to file a motion to compel expired.  Plaintiff insists that his counsel has made a good faith and reasonable effort to confer on this discovery dispute ever since plaintiff learned of the "deficiency" in an effort to secure Hartford's voluntary compliance.  Defendants respond that they are not seeking relief based on plaintiff's violation of the timing requirements.

---

[17] *In re Bank of Amer. Wage & Emp't Practices Litig.*, 275 F.R.D. 534, 538 (D. Kan. 2011).

[18] *Id.*

However, defendants argue that "left unchecked, Plaintiff's violation of his explicit agreement regarding discovery substantially undermines the goals of Local Rule 37.2."[19]

If a motion to compel is filed after the expiration of the time allowed for its filing, the proper standard to determine whether it should be allowed out of time is not a showing of good cause, but rather a showing of excusable neglect.[20] The factors used to determine excusable neglect include: (1) whether the movant acted in good faith; (2) the reason for the delay, including whether it was within the reasonable control of the movant; (3) the danger of prejudice to the nonmoving party; and (4) the length of the delay and its potential impact on judicial proceedings.[21]

Plaintiff clearly attempted to reconcile the discovery dispute within the thirty-day window, and he has explained that he didn't receive the responsive documents until *after* the deadline to file motions expired. Even after the deadline ran, plaintiff continued to confer with defendants to resolve the dispute informally. There appears to be no danger of prejudice to defendants as they do not oppose the timing of plaintiff's motion. With the discovery deadline almost three months away,[22] there should be minimal, if any, impact on the judicial proceedings. Given the foregoing, the court will decide plaintiff's

---

[19] ECF doc. 34 at 4.

[20] *Hartford Ins. Co. v. P & H Cattle Co., Inc.*, No. 05-2001, 2008 WL 5046345, at *2 (D. Kan. Nov. 24, 2008) (citation omitted).

[21] *Id.* (citation omitted).

[22] December 31, 2014 (ECF doc. 20).

motion to compel on its merits.  Plaintiff has shown excusable neglect for filing his motion out of time.

### B.    Objections to Request

Under Rule 34(b)(2)(B) of the Federal Rules of Civil Procedure, the party responding to requests for production must "either state that inspection and related activities will be permitted … *or* state an objection to the request, including the reasons." The court has substantial discretion to determine the propriety of such requests and the sufficiency of responses.[23]  An objection and answer preserves nothing and serves only to waste the time and resources of both the parties and the court.[24]  Answering discovery requests "subject to" objections is "manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure."[25]  The court could find "whenever [defendants'] answer accompanies an objection, the objection is deemed waived and the answer, if responsive, stands."[26]  Nonetheless, the court will address the validity of defendants' objections.

---

[23] *Audiotext Commc'ns Network Inc. v. US Telecom, Inc.*, No. 94-2395, 1995 WL 625744, at *1 (D. Kan. Oct. 5, 1995).

[24] *Consumer Electronics Ass'n v. Compras & Buys Magazine, Inc.*, No. 08-21085, 2008 WL 4327253, at *3 (S.D. Fla. Sept. 18, 2008).

[25] *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684, 2014 WL 545544, at *2 (D. Kan. Feb. 11, 2014).

[26] *Id.* (citations omitted).

In response to plaintiff's motion to compel, defendants object to Request for Production No. 9 for two reasons: (1) on the grounds of fundamental fairness per the discovery agreement; and (2) on the merits because the discovery sought is outside the administrative record and is not probative of defendants' alleged conflict of interest.  As earlier explained, when ruling upon a motion to compel, the court generally considers those objections which have been timely asserted *and* relied upon in response to the motion.  The court generally deems objections initially raised but not relied upon in response to the motion as abandoned.[27]  In their response brief, defendants mention that they originally objected to Request for Production No. 9 as requesting confidential and proprietary material and attached an affidavit in support.[28]  However, defendants failed to re-assert or substantively address this objection in their response to plaintiff's motion to compel.  Therefore, the court *need* not address it but will do so briefly.

### 1.     Confidential, Proprietary Material

A general concern for protecting confidentiality does not equate to privilege.[29]  Thus, information and documents are not shielded from discovery merely because they are confidential.[30]  Defendants have failed to cite any case law to support their original

---

[27] *Sonnino*, 221 F.R.D. at 670 (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 664 (D. Kan. 1999)).

[28] ECF doc. 34 at 2; ECF doc. 34-2.

[29] *DIRECTV, Inc. v. Pucinelli*, 224 F.R.D. 677, 684-85 (D. Kan. 2004) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 633, 642 (D. Kan. 2011)).

[30] *Id.*

confidentiality objection.  Any concerns defendants have about the confidentiality of the requested information can be solved by the enforcement of the current protective order[31] or if necessary, by the entry of another protective order.  Defendants have failed to meet their burden and this objection is therefore overruled.

### 2. Discovery Agreement

Defendants argue plaintiff's motion should be denied on grounds of fundamental fairness because it violates the parties' out-of-court discovery agreement (the "Agreement").  Defendants assert that the court should clarify that it expects the parties to comply with their discovery agreements since the court "has a substantial interest in encouraging parties to attempt to resolve discovery disputes without Court involvement."[32]  The only authority defendants cite in support of this argument is a reference to *McBride v. Medicalodges, Inc.*, No. 06-2535-JWL, 2008 WL 2437559, at *2 (D. Kan. June 13, 2008), in which the parties were ordered to produce all documents they had agreed to produce per the parties' agreement.  Plaintiff asserts that *defendants* have violated the Agreement because their responses to Request for Production No. 9 are deficient.  Plaintiff insists that the limited discovery he seeks was agreed to by Hartford (per the Agreement).

---

[31] *See* ECF doc. 24.

[32] ECF doc. 34 at 4.

Because both sides have alleged the opposing party is in violation of the Agreement and defendants' provided minimal authority in support of their objection, the fair and most reasonable approach is to decide this motion on the merits. Therefore, defendants' objection to plaintiff's motion as a breach of the parties' informal discovery agreement is overruled.

### 3.    Non-Record Conflict Discovery

Defendants re-assert their objection that the documents sought in Request for Production No. 9 are beyond the non-record "conflict" discovery permitted by *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Plaintiff argues that Hartford should be ordered to produce the "Claims Excellence material" because it is relevant and material to his case. Plaintiff asserts that the requested information, which consists of Hartford policies for handling LTD claims, is relevant and discoverable because it will shed light on Hartford's reasonable policies and procedures for making benefit determinations. In support, defendant cites three ERISA cases, all of which are outside of the Tenth Circuit,[33] but in each case the district court found that the claim manual or like documents were discoverable.    Plaintiff concludes that he is "entitled to discover

---

[33] *See* ECF doc. 32 at 7 (citing *Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 628 (N.D. Cal. 2010); *Cannon v. UNUM Life Ins. Co. of Am.*, 219 F.R.D. 211, 214 (D. Me. 2004) ("[O]bviously if [Hartford] has internal memoranda or policies that instruct claim handlers how to apply the [policy] limitation[s], such materials are relevant to the question of whether [Hartford] acted arbitrarily and capriciously in connection with its denial of [plaintiff's] claim."); *Kruk v. Metro. Life Ins. Co., Inc.*, No. 7-1533, 2009 WL 1481543 (D. Conn. May 26, 2009)).

other Claims Excellence policies to show that Hartford favored its own finances over fair and consistent benefit determinations."[34]

Defendants argue that conflict discovery is limited to information probative of conflict, such as vendor compensation and denial rates.   Defendants assert that the documents plaintiff seeks are well beyond those limits.   Defendants explain that they already have provided plaintiff with discovery probative of conflict, including: (1) the amounts billed to Hartford by two outside vendors for 2010-2013; (2) the percentage of claims approved for the Plan at issue from 2010-2013; (3) the percentage of claims denied under the Plan from 2010-2013; and (4) sections of the BMS Reference Manual regarding independent medical examinations, Social Security disability, Disability Best Practices Memo, Disability Updates, Claim Submission & Investigation, Definition of Disability; Denials and Terminations; and Legal.   Defendants assert that there is no evidence of conflict and the documents plaintiff requests would be cumulative and tantamount to an unauthorized fishing expedition.

In reviewing a plan administrator's decision, federal courts are limited to the administrative record.[35]   Although district courts are prohibited from considering extra-record materials related to a claimant's eligibility for benefits, they may consider extra-

---

[34] *Id.* at 8.

[35] *Brown v. Hartford Life Ins. Co.*, 428 Fed. App'x 817, 820 (10th Cir. 2011) (citation omitted).

record materials related to an administrator's dual-role conflict of interest.[36]   The Tenth Circuit has held that we must apply Federal Rule of Civil Procedure 26(b) to discovery requests seeking information related to a dual-role conflict of interest.[37]   However, neither a claimant nor an administrator should be allowed to use discovery to engage in unnecessarily broad discovery that slows the efficient resolution of an ERISA claim.[38] Rule 26(b) permits discovery only of "[r]elevant information" and the discovery must "appear [] reasonably calculated to lead to the discovery of admissible evidence."[39]   But, all discovery is limited by Rule 26(b)(2) which protects against overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests.[40]   The party moving to supplement the record or engage in extra-record discovery bears the burden of showing its propriety.[41]

A district court has substantial discretion in handling discovery requests under Rule 26(b).[42]   In exercising its discretion, the court may account for several factors that

---

[36] *Id.* (citation omitted).

[37] *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1162 (10th Cir. 2010).

[38] *Id.* at 1162-63.

[39] Fed. R. Civ. P. 26(b)(1).

[40] Fed. R. Civ. P. 26(b)(2).

[41] *Murphy*, 619 F.3d at 1163.

[42] *Id.* at 1164.

may militate against broad discovery.[43]  First, although the court must keep in mind that ERISA seeks a fair and informed resolution of claims, ERISA also seeks to ensure a speedy, inexpensive, and efficient resolution of those claims.[44]  Second, in deciding whether a discovery request is overly costly or burdensome in light of it benefits, the court must also consider the necessity of the discovery.[45]

Hartford serves dual roles under the Plan—it both insures the Plan and administers it.  It thus has a conflict of interest.  Case law authorizes some limited discovery because of the exception to the general rule against discovery in ERISA cases when a conflict of interest exists by virtue of the dual role of a litigant who both insures and administers the claims.[46]  Plaintiff seeks certain "Claims Excellence" material to show that Hartford favored its own finances over fair and consistent benefit determinations.  Defendants argue the information sought is not probative of conflict and cumulative.

Although it is a close call, the court finds that the discovery sought is relevant.[47] Plaintiff has met his burden to show a conflict exists and the discovery he seeks may reasonably lead to the discovery of admissible evidence probative of conflict. Defendants have not argued and the court is not persuaded that producing these materials

---

[43] *Id.* at 1163.

[44] *Id.*

[45] *Id.*

[46] *See Glenn*, 554 U.S. 105; *Murphy*, 619 F.3d 1151.

[47] *See* ECF doc. 32-7.

would be overly burdensome or overly costly for defendants.  In fact, defendants admit that they offered to produce the requested documents at one point but changed their mind after plaintiff pressed for additional documents.  The documents plaintiff requests are specific and not overly broad.  However, plaintiff should keep in mind that the court must help ensure the speedy and efficient resolution of this ERISA claim.  Defendants' production of the requested documents should not continue plaintiff's pattern of additional requests.  The foregoing could tip the scales where the burden of production may outweigh the necessity of the discovery.

IT IS THEREFORE ORDERED:

1.  Plaintiff's motion to compel **(ECF doc. 31)** is granted.   All responsive documents that defendants have been ordered to produce shall be served by **October 14, 2014.**

2.  The parties shall bear their own expenses and attorney fees incurred in connection with this motion.

Dated October 3, 2014, at Kansas City, Kansas.


 s/ James P. O'Hara_____
James P. O'Hara
U. S. Magistrate Judge